2005 ND 158

In the Matter of the GUARDIANSHIP AND CONSERVATORSHIP OF Doris Muriel ONSTAD.

Elizabeth Onstad, Petitioner and Appellant

v.

Mary Onstad and John Onstad, Guardians and Conservators, Respondents and Appellees

Doris Muriel Onstad, through her Guardian Ad Litem, C. Nicholas Vogel, Appellee.

No. 20040235.

Supreme Court of North Dakota.

Sept. 26, 2005.

Monty G. Mertz, Mertz Law Office, Fargo, N.D., for petitioner and appellant.

Mark R. Hellerud, Ada, MN, for respondents and appellees.

C. Nicholas Vogel (on brief), Guardian Ad Litem, Vogel Law Firm, Fargo, N.D., for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Elizabeth Onstad appealed from an order denying her petition to remove John Onstad and Mary Onstad as guardians and conservators of Doris Onstad, and an order for restitution of property to the guardians and conservators, which was conditionally stayed pending appeal. We reverse and remand for further proceedings.

I

[¶ 2] John and Mary Onstad filed a petition seeking their appointment as co-guardians and co-conservators for their mother, Doris Onstad. The district court

appointed a visitor to interview Doris, an attorney to represent her as guardian ad litem, and a physician to examine her. Their reports were available at the hearing held on August 27, 2002. Elizabeth Onstad objected to the proposed guardians and conservators and to proceeding without the presence of Doris.

[¶ 3] Based on the physician's and visitor's reports, Judge Dawson ruled there was good cause for Doris Onstad's absence from the hearing and that the reports showed by clear and convincing evidence she "is an incapacitated person who is in need of a guardian." Judge Dawson found John and Mary Onstad "are appropriate persons, and the Court will appoint them as the guardians." She also determined a conservatorship was necessary and Doris' house needed to be sold. On September 6, 2002, Judge Dawson issued an order finding it was necessary to appoint a guardian and a conservator for Doris Onstad, finding John and Mary Onstad have the highest priority and no other person with equal priority has petitioned the court, and appointing John and Mary Onstad as guardians of the person and conservators of the estate of Doris Onstad.

[¶ 4] In a letter of September 10, 2002, the attorney for John and Mary Onstad advised Elizabeth Onstad's attorney, in part: "You have expressed concerns over Doris' absence from the August 27 hearing. In light of the concerns, my clients would consider a re-hearing on the guardianship issue." On November 26, 2002, Elizabeth Onstad filed a motion seeking vacation of the order appointing John and Mary Onstad as Doris' guardians and conservators and an order re-opening the proceeding alleging in essence a violation of due process, and asserting she "has priority superior to all other persons to be appointed guardian of her mother," requesting that she be appointed as the guardian

for Doris Onstad, and requesting that Northern Capital Trust be appointed as the conservator of the estate of Doris Onstad. On that same day, Elizabeth also filed a petition for removal of John and Mary Onstad as the guardians and conservators, appointment of herself as guardian, and appointment of Northern Capital Trust as conservator of the estate of Doris Onstad. Elizabeth supported her motion and petition with affidavits of herself and several other individuals. In his response to the motion for reconsideration, counsel for John and Mary Onstad asserted that the issues raised in the motion should have been raised in an appeal.

[¶ 5] At the outset of a December 19, 2002, hearing on the motion and petition, Judge Dawson stated "it probably would have been better ... to have had an opportunity to explore more fully both sides of the issue" and that she appreciated the "opportunity to hear more fully both sides." Judge Dawson said she was adhering to her "decision that it wasn't in the best interests of the ward to be here," and she liked "the idea of having North Capital Trust be the conservator." Judge Dawson said "this will be scheduled for a hearing in my next hearing week and we'll block a significant amount of time, enough time for everybody to be heard." Judge Dawson directed the attorneys to address the sale of Doris' house "at that next hearing," directed John and Mary Onstad's attorney "to draw an order covering everything that I've just said," and advised that "I'll sign the order then for the visitor, the doctor and guardian ad litem to just do another report so that I can be current." Judge Dawson also ordered that a pending proceeding to evict Elizabeth from Doris' house "will be in abeyance until the hearing's over so we can deal with the house."

[¶ 6] No order was drawn by John and Mary Onstad's attorney, Bruce Johnson,

as directed by Judge Dawson, nor did Elizabeth Onstad seek the entry of the order. Rather, on September 15, 2003, the court issued an order allowing Bruce D. Johnson to withdraw as counsel for John and Mary Onstad, and allowing Mark R. Hellerud as substitute counsel. On December 5, 2003, the district court issued an order (1) appointing a physician and a visitor to examine and interview the proposed ward and submit reports by January 5, 2004; (2) appointing a guardian ad litem for the proposed ward and directing him to submit a response to the petition by January 5, 2004; and providing (3) "the eviction proceeding initiated by petitioner Mary Onstad and John Onstad concerning the house of the ward shall be held in abeyance until the next hearing in this matter, which is scheduled for *January 15 2004 at 1:30 pm.*" The court issued amended orders on December 11, 2003, and December 18, 2003.

[¶ 7] Judge Backes[1] held a hearing on the pending motion and petition on January 15, 2004. John and Mary Onstad were represented by counsel and Elizabeth Onstad appeared pro se. The court denied Elizabeth's request for a continuance. At the outset of the hearing before Judge Backes, the attorney for John and Doris Onstad noted he "was also led to believe that this—we might be somewhat almost starting from scratch on the—actually the appointment of who was going to be guardian and conservator the way the issues shaped up." Judge Backes said the court was "not going to go into" appealable errors that occurred in the initial proceedings, and continued:

We are not going back to the original hearing. In fact, I'll make it very clear at this point. The motion for reconsid-

eration of the order appointing guardians and conservators and for a new hearing, the Court has reviewed the files and will dismiss that motion on its merits as a matter of law. The only hearing that we are having today is a brief—the motion for reconsideration—the petition for removal of guardians and conservators and the appointment of successor[ ] guardians and conservators.

On May 27, 2004, Judge Backes issued a memorandum opinion providing, in part:

The Court, having considered all of the documents and reports available, cannot find that the Petition for removal contains any grounds that would justify the removal of Mary Onstad and John Onstad as guardians and conservators of Doris Muriel Onstad. The Court cannot find a significant change of circumstances, nor can the Court determine that it would be in the best interest of the Ward, Doris Muriel Onstad, to change guardians or conservators. The Court is of the further opinion that Elizabeth Onstad's failure to assert a priority for appointment at the time of the August 27, 2002 hearing is now barred by doctrines of laches and res judicata.

The Petition to remove Mary Onstad and John Onstad as guardians and conservators is in all respects denied. The attorney for Mary Onstad and John Onstad is directed to prepare an Order accordingly.

An order was prepared for Judge Backes' signature. That order provided:

The petition of Elizabeth Onstad for an order for Removal of Guardians and Conservators and Appointment of Successor Guardian and Conservator came on for hearing before the Court, the

---

**1.** Elizabeth Onstad noted in her brief: "Prior to the new hearing, a judge rotation occurred."

Honorable Norman Backes, Judge of the District Court, presiding at the Cass County Courthouse in Fargo, North Dakota on the 12th of January, 2004, at 1:45 p.m. The Court having considered the records and files in the action, and being full[y] advised in the premises,

IT IS HEREBY ORDERED:

1. The petition to remove Mary Onstad and John Onstad as guardians and conservators is hereby denied.

2. The eviction proceeding concerning the ward's house that was held in abeyance by this Court pursuant to Judge [Georgia] Dawson's oral order of December 19, 2002 until this matter could he heard is hereby reinstated and the abeyance lifted.

After Judge Backes retired, Judge Herman signed the order on June 10, 2004. There is no certificate of familiarity with the record as provided by N.D.R.Civ.P. 63 in the record before us.

[¶ 8] In ruling on the guardians' and conservators' motion for an order evicting Elizabeth Onstad from Doris Onstad's home and Elizabeth's motion for a continuance and sanctions, the district court issued an order denying Elizabeth's motions and ruling the guardians and conservators were entitled to restitution of the premises, but conditionally staying restitution pending appeal to this Court.

II

[¶ 9] Elizabeth Onstad has raised several issues on appeal. We deem the first due-process issue—whether or not she had "a meaningful opportunity to be heard on her application to be her mother's guardian"—to be dispositive of this appeal.

[¶ 10] Section 30.1–28–04(2)(c), N.D.C.C., provides that a court may appoint a guardian upon finding, on clear and convincing evidence, that a proposed ward is an incapacitated person. Section 30.1–28–11(3), N.D.C.C., specifies a priority list for appointment of guardians. Section 30.1–28–11(4), N.D.C.C., provides, in part: "With respect to persons having equal priority, the court shall select the one it deems best qualified to serve." Elizabeth has never received a fair opportunity to show the court why she should be appointed to serve as Doris Onstad's guardian. Instead, Judge Backes required Elizabeth to show why the court should remove a guardian and appoint a successor under N.D.C.C. § 30.1–28–07(1).

[¶ 11] In ruling that the question of whom should be appointed as a guardian was not an issue and in dismissing the motion for reconsideration as a matter of law, Judge Backes misperceived the record. Judge Dawson, who originally appointed John and Mary Onstad as guardians, had already granted Elizabeth's motion for reconsideration after determining she had made the decision without enough information, to give herself "an opportunity to hear more fully both sides," with enough hearing time to be scheduled "for everybody to be heard." Thus, Elizabeth's motion for reconsideration of the appointment of John and Mary Onstad as Doris' co-guardians and co-conservators had already been granted on due process grounds and the issue of whom should be appointed was properly before Judge Backes. In the procedural posture of this case, we agree with the court in *Ellis v. United States*, 313 F.3d 636, 646 (1st Cir.2002), noting there is a presumption "that a successor judge should respect the law of the case" and "orderly functioning of the judicial process requires that judges of coordinate jurisdiction honor one another's orders and revisit them only in special

circumstances." [2]

[¶ 12] The only reason Judge Backes gave for dismissing the motion for reconsideration and limiting the proceeding to removal of the appointed guardians and conservators and appointment of substitutes was because "we're talking an awful lot about errors that occurred in the initial proceedings, which were appealable, and the Court, of course, is not going to go into those errors." Judge Dawson had already rejected such an argument by John and Mary Onstad and ordered a new hearing on the question of whom should be appointed as Doris Onstad's guardian.

Furthermore, while N.D.R.Civ.P. 60(b) ordinarily may not be used as a substitute for an appeal or to relieve a party from deliberate choices, *Olander Contracting Co. v. Gail Wachter Invs.*, 2003 ND 100, ¶ 10, 663 N.W.2d 204, that "is not an inflexible rule and in unusual cases a party who has not taken an appeal may obtain relief on a 60(b) motion," *Neubauer v. Neubauer*, 524 N.W.2d 593, 595 (N.D. 1994). Courts have an inherent power "to vacate or otherwise grant relief from a judgment in the interest of justice." *Kopp v. Kopp*, 2001 ND 41, ¶ 9, 622 N.W.2d 726.

[¶ 13] From our review of the record, we conclude Judge Dawson did not abuse

---

2. This Court has regularly described the law of the case doctrine as "the principle that if an appellate court has passed on a legal question and remanded the cause to the court below for further proceedings, the legal question thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain the same." *See, e.g., Robertson v. North Dakota Workers Compensation Bureau*, 2000 ND 167, ¶ 18, 616 N.W.2d 844 (citations omitted). We have been less effusive about application of the doctrine in a single proceeding, involving successor judges within a coordinate court. We therefore find it helpful to quote statements from *Ellis* explaining:

[T]he law of the case doctrine affords litigants a high degree of certainty as to what claims are-and are not-still open for adjudication. For another thing, it furthers the abiding interest shared by both litigants and the public in finality and repose. Third, it promotes efficiency; a party should be allowed his day in court, but going beyond that point deprives others of their days in court, squanders judicial resources, and breeds undue delay. Fourth, the doctrine increases confidence in the adjudicatory process: reconsideration of previously litigated issues, absent strong justification, spawns inconsistency and threatens the reputation of the judicial system. Finally, judges who too liberally second-guess their co-equals effectively usurp the appellate function and embolden litigants to engage in judge-shopping and similar forms of arbitrage.

313 F.3d at 647 (internal citations omitted).

*Ellis* also illuminates when the law of the case doctrine may permit rulings to be revisited:

[T]here are times when the law of the case may give way. The question of what circumstances justify revisiting a ruling previously made in the same proceeding by a judge of coordinate jurisdiction is case-specific. The resolution of that question is guided, however, by certain general principles. We enumerate those principles.

First, reconsideration is proper if the initial ruling was made on an inadequate record or was designed to be preliminary or tentative. Second, reconsideration may be warranted if there has been a material change in controlling law. Third, reconsideration may be undertaken if newly discovered evidence bears on the question. Lastly, reconsideration may be appropriate to avoid manifest injustice. In that regard, however, neither doubt about the correctness of a predecessor judge's rulings nor a belief that the litigant may be able to make a more convincing argument the second time around will suffice to justify reconsideration. For this purpose, there is a meaningful difference between an arguably erroneous ruling (which does not justify revisitation by a co-equal successor judge) and an unreasonable ruling that paves the way for a manifestly unjust result.

313 F.3d at 647–48 (internal citations omitted).

her discretion in granting Elizabeth Onstad's motion for reconsideration and granting a new hearing on the issue of whom to appoint as Doris Onstad's guardian. We further conclude Judge Backes erred as a matter of law in concluding that the issue of whom should be appointed as Doris Onstad's guardian was precluded by Elizabeth's failure to appeal the initial appointment and in limiting the proceeding to the issue of whether the appointed guardians should be removed and a successor guardian appointed.

[¶ 14] We need not address the other questions raised, which are unnecessary for the determination of this appeal. *Huff v. North Dakota State Bd. of Med. Exam'rs–Investigative Panel B,* 2004 ND 225, ¶ 15, 690 N.W.2d 221.

### III

[¶ 15] The orders appealed from are reversed and the matter is remanded to Judge Dawson for further proceedings in accord with Judge Dawson's direction at the December 19, 2002 hearing. We express no view on the matter other than to draw to the attention of the parties, as well as the trial court, that neither Judge Dawson's original order appointing John and Mary Onstad as Doris Onstad's co-guardians and co-conservators, nor her order holding in abeyance proceedings to evict Elizabeth from Doris' house have been vacated and they remain in effect pending resolution after remand.

[¶ 16] DONOVAN FOUGHTY, D.J., KIRK SMITH, S.J., BENNY GRAFF, S.J., and DANIEL J. CROTHERS, J., concur.

[¶ 17] The Honorable KIRK SMITH, S.J., the Honorable DONOVAN FOUGHTY, D.J., and the Honorable BENNY GRAFF, S.J., sitting in place of KAPSNER, J., MARING, J., and SAND- STROM, J., disqualified. Justices MARING and SANDSTROM recused themselves following oral argument on June 10, 2005 and the case was reargued on September 1, 2005.