733 So.2d 640 (1999)
STATE of Louisiana
v.
Christopher BROCKEL.
No. 98-KA-1089.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 1999.
*641 Mark A. Marino, Destrehan, for Defendant/Appellant.
Harry J. Morel, Jr., District Attorney, Howat Peters, Jr., Assistant District Attorney, Hahnville, for Plaintiff/Appellee.
Panel composed of Judges SOL GOTHARD THOMAS F. DALEY, and SUSAN M. CHEHARDY.
*642 DALEY, Judge.
Defendant Christopher Brockel appeals his conviction of aggravated rape. On appeal, he assigns three errors of the trial court. First, he argues that his Sixth Amendment right to confrontation of witnesses was violated by the victim's placement facing away from defendant while she testified. Second, he contends that the trial court erred in its denial of his motion for continuance based upon the State's untimely compliance with discovery. Third, he argues that the trial court erred in denying his Motion to Quash Indictment based upon the State's amendment of the Bill of Indictment. We affirm.
On November 8, 1996, the St. Charles Parish Grand Jury issued an indictment charging defendant, Christopher Brockel, with one count of aggravated rape of the minor child J.J. in violation of LSA-R.S. 14:42(A)(4). Defendant was arraigned on February 19, 1997, and entered a plea of not guilty. On September 8, 1997, the state amended the indictment to allege that the rape occurred between July 1, 1994 and July 22, 1996.[1]
On October 22, 1997, defendant was arraigned as to the amended bill of information, and maintained his plea of not guilty. On the same day, defendant filed a motion to quash the indictment. The motion was argued and denied that day.
Prior to the commencement of trial, the state informed the court it would not seek the death penalty. Defendant was tried by a jury of twelve on December 2 and 3, 1997. On December 3, the jury returned a verdict of guilty as charged. On February 19, 1998, defendant filed a motion for new trial. The motion was argued and denied that day. On March 18, 1998, the trial court sentenced defendant to a mandatory term of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant made an oral motion for appeal that day. The motion was granted on March 26, 1998.

FACTS
On July 22, 1996, nine-year-old J.J. reported to her mother, Gwendolyn ("Wendy") Sims, that defendant, Christopher Brockel, had performed sexual acts on her. These acts were alleged to have occurred at a trailer home in Montz, where J.J. lived with her two sisters, her mother, and defendant Chris Brockel, Ms. Sims' live-in boyfriend. Ms. Sims telephoned police, and three deputies from the St. Charles Parish Sheriff's Office were immediately dispatched to the victim's home. Sergeant William Faucheaux briefly interviewed J.J. and her mother. Defendant was not at the residence when police arrived, but was arrested that day.
Sergeant Ardine Boyd of the juvenile division met with J.J. and Ms. Sims at the sheriff's office on the morning of July 23, 1996. Boyd interviewed J.J., and transcribed her statement.[2] Sgt. Boyd testified that J.J. told her of one occasion on which defendant attempted to insert his penis into her anus.[3] When asked whether defendant touched other parts of her body, the child responded that he had pinched her breasts "a couple of times."
Sgt. Boyd arranged for J.J. to be examined by Dr. Scott Benton at Children's Hospital in New Orleans. The doctor, who was accepted by the trial court as an expert in forensic pediatrics and child sexual abuse, testified that he saw J.J. on July 31, 1996. He physically examined the child. The doctor testified that J.J.'s hymen was not in the normal range for a child her age. It was markedly narrowed posteriorly. Additionally, the hymen contained two areas of abnormality, which the doctor described as clefts. It was Dr. Benton's opinion that the clefts were the remnants *643 of a tear. He testified that J.J. could not have been born with these abnormalities. Nor did he believe they were caused by an accident, since neither J.J. nor her mother reported such an incident. It was Dr. Benton's opinion that she had sustained blunt penetrating trauma.
Although the doctor could not say exactly what penetrated J.J.'s vagina, he testified that the injury to her hymen was consistent with penetration by a penis. According to Benton, a child of J.J.'s age whose hymen was penetrated would feel a great deal of pain. The doctor testified that he found no evidence of injury to the anus, but that there is not always physical evidence when a child's anus is penetrated.
J.J. was eleven years old at the time of trial. After questioning the child out of the jury's presence, the judge found her competent to testify. J.J. testified that she has known defendant since she was three or four years old. She stated that he tried to "stick his penis" in her "back side" on two occasions. The first incident happened in her bedroom, while her mother was away caring for an elderly neighbor. According to J.J., defendant forced her to pull down her pants and lie on the bed. Defendant put his penis inside her and she felt a strong, sharp pain.
J.J. testified that the second incident happened in the kitchen, about two weeks before she reported the abuse to her mother. On that day her mother, Ms. Sims, was at a nearby store, and J.J.'s sisters were playing in the yard. She testified that defendant again forced her to remove her pants, then he approached her from behind, bent her over the kitchen table and put his penis inside her. When defendant heard her sisters enter the trailer, he went into another room and pretended he had been watching television. J.J. testified that defendant threatened to kill her family if she should report the abuse. His threats prevented her from notifying her mother immediately. Both J.J. and Ms. Sims testified that defendant often punished the children by hitting them with a stick or a board. The victim testified that defendant never tried to put his penis into her vagina, but that defendant had at times touched her vagina and had put his penis in her behind.
On April 15, 1997, J.J. was interviewed by Amalee Gordon, a Gretna Police officer with the Child Advocacy Center. The videotaped interview was admitted at trial, and was viewed by the jury. In that interview, J.J. stated that defendant had molested her over a period of a few years. At times he touched her vagina with his hand. On one occasion defendant attempted to place her hand on his penis.
J.J. stated that she was unsure of the date of the bedroom incident, but that it probably happened the summer after she completed the third grade. She told Gordon that she was face down on her bed, and defendant pulled down her pants and tried to put his penis in her behind. During the kitchen incident, defendant bent her over the kitchen table, and tried to put his penis in her behind.
Ms. Sims testified that she has had a live-in relationship with defendant since 1993, and that they have lived in St. Charles Parish since 1994. Prior to that time, they lived in St. John the Baptist Parish. Before the move to St. Charles Parish, Ms. Sims suffered an accident that incapacitated her for some time and that the defendant had assisted her around the house and with the children. She testified that on July 22, 1996, J.J. told her that defendant had been molesting her since the day of the accident. Ms. Sims stated that defendant was controlling with her and her children, and that the girls were afraid of him.
Defendant testified on his own behalf at trial. He stated that during her illness, Ms. Sims asked him to take care of disciplining the children. He admitted that he spanked the girls using strips of wood. Defendant testified that he did not rape J.J., or touch her in an inappropriate way. He stated he had never been arrested for *644 a sex offense, but that he had several prior felony convictions.
Defendant described an incident in 1993 or 1994, in which he allowed a male co-worker to spend a night at the trailer he shared with Ms. Sims and her daughters. Defendant awoke to find the co-worker getting up from the living room floor, where J.J. was asleep on a pallet. J.J.'s blanket had been pulled away. Defendant attacked him, accusing him of "messing around" with J.J. Defendant stated that J.J. never told him she had been molested by anyone.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that the trial court's ruling, allowing the victim to testify in a chair placed in front of the jury box, so that the witness could not see the defendant, denied the defendant his confrontational rights guaranteed under the Confrontation Clause of the United States Constitution.
By this assignment, defendant complains he was deprived of his constitutional right to confrontation because the court allowed the victim to testify while facing away from him. Defense counsel raised an objection to this arrangement out of the jury's presence. Counsel noted for the record that J.J. was not sitting in the witness stand, but in a chair facing the jury, with her back towards defendant. The child was placed twelve feet away from defendant.
After hearing arguments by the state and the defense, the trial judge denied defendant's objection, and allowed the victim to remain where she was. The court reasoned that since all the parties were in the same room, there was sufficient compliance with the Confrontation Clause. The trial court stated:
I'm going to note for the record that in fact, and if you disagree you can move the podium back, but that the witness is in such a position that the defendant and his counsel can see the witness. The witness is in a position and is seated in away that she is not facing directly at the defense table. Therefore, I will overrule the objection, and I will allow the witness to testify from her seated position.
The defendant further objected that the witness's view of the defendant was obstructed, but the court disagreed, stating that the witness's back was to the defendant, but her view of him was not obstructed.
Defendant later made the court's ruling the basis for a motion for new trial. That motion was heard and denied on February 19, 1998.
The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to be confronted with the witnesses against him..." This amendment is made applicable to the states through the Fourteenth Amendment. See Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Additionally, Article I, § 16 of the Louisiana Constitution of 1974 guarantees the accused in a criminal prosecution the right to be confronted with the witnesses against him.
The Supreme Court has held that the Confrontation Clause provides "two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination."[4] The purpose of the face-to face encounter is to make it more difficult for witnesses to fabricate testimony, and to allow the trier-of-fact to view the demeanor of the witnesses and thereby assess their credibility.[5] Although the Coy *645 court indicated that the right to confrontation is not absolute, and may give way to other important interests, it declined to address the question of what might constitute such an exception.
More recently, in Maryland v. Craig[6], the court found that while there remains a preference for face-to-face confrontation, "we cannot say that such confrontation is an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers." The court determined that the preference "must occasionally give way to considerations of public policy and the necessities of the case."[7] The court held that the state's interest in protecting child abuse victims from the trauma of testifying is sufficiently important to justify the use of special procedures, provided the state makes an adequate showing that the interest of protecting the child witness is sufficiently important to justify depriving the defendant of his right to face-to-face confrontation. The Craig court further held that the determination of whether such a special procedure is justified must be made on a case-by-case basis. The trial court must determine whether the procedure is necessary to protect the welfare of the child witness, and that the child would be traumatized by the presence of the defendant. The distress suffered by the child must be more than mere nervousness, excitement, or reluctance to appear in court.[8]
In Louisiana, LSA-R.S. 15:283 provides special procedures to be used in taking the testimony of child abuse victims. It provides that, on the motion of any of the parties or the court itself, a physical or sexual abuse victim under the age of fourteen may be allowed to testify via closed circuit television from a room other than the courtroom. Such an arrangement is contingent upon expert testimony that the child would likely suffer serious emotional distress if forced to testify in open court, and that the child cannot reasonably communicate his testimony to the court without the use of the televised system. Paragraph B of the statute provides:
The court shall ensure that the child cannot see or hear the accused unless such viewing or hearing is requested for purposes of identification. However, the court shall ensure that the accused is afforded the ability to consult with his attorney during the testimony of the child.
In State v. Murphy, 542 So.2d 1373 (La. 1989), the Louisiana Supreme Court struck, as violative of the Confrontation Clause, the first sentence of paragraph B. Defendant argues that, by seating J.J. so that she faced away from him, the trial court improperly utilized the statutory procedure banned by the supreme court in Murphy. Although the trial court did not cite R.S. 15:283 as the basis of its ruling, the court's intent appears to have been to ensure that the child could not see defendant except for identification purposes.[9] J.J. was not placed in a separate room during her testimony, nor was closed circuit television utilized. The child remained in the courtroom, facing away from defendant, and he apparently could not see her face. The record shows that defendant and his attorney nevertheless had an unobstructed view of the witness, and that she was in such a position as to be seen by the jury. At one point during her testimony, *646 J.J. turned her head, looked at defendant, and identified him as the perpetrator.
After considering the above jurisprudence, we find that the courtroom arrangement did not deprive the defendant of his confrontation rights under the Sixth Amendment.
In State v. Smith, 95-734 (La.App. 5 Cir. 1/30/96), 668 So.2d 1260, writ denied, 98-1406 (La.10/16/98), 726 So.2d 899, this court affirmed the defendant's second degree murder conviction under circumstances similar to those in the instant case. A key witness at Smith's trial was a twelve-year-old child who looked on as the victim, his mother, was shot in the head. The state moved that the child be allowed to face away from defendant during his testimony. The prosecutor noted that the child had entered the courtroom earlier, and was so traumatized by the sight of the defendant that he was unable to speak for a while. Using LSA-R.S. 15:283 as guidance, the trial court granted the state's motion and allowed the witness to sit in a chair placed next to the bench. On appeal, Smith argued that he had been deprived of his right to face his accusers. The defendant further complained that the trial court erred in applying R.S. 15:283 in a situation where the child witness was not the victim, and where the state presented no proof of the necessity for the arrangement. This court rejected the defendant's arguments on appeal. The Smith court determined that the defendant was not deprived of his right to confront his accusers, as he was in a position to see and hear the child witness, and he was able to fully cross-examine the child. In Smith, as in the instant case, the state offered no expert testimony concerning the child witness's emotional state. As was the case in Smith, the witness in defendant's case remained in the courtroom, and defendant was able to fully cross-examine her.
The special seating arrangement, given that the juvenile victim testified in the courtroom in defendant's presence and was subject to cross examination by defense counsel, did not violate his Sixth Amendment constitutional rights. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant here complains that he was prejudiced by the trial court's refusal to grant him a trial continuance, based upon the state's untimely discovery responses. Under LSA-C.Cr.P. art. 717, defendant was entitled to a copy of any record of his arrests and convictions in the state's possession or custody. Defendant requested such record in a motion for discovery filed February 28, 1997.
On December 2, 1997, the day of trial, defendant filed a motion for continuance, based on the state's failure to turn over a copy of his criminal "rap sheet" until December 1, 1997. Defense counsel argued that the rap sheet was dated August 8, 1996, and thus could have been given to him much earlier than the day before trial. Counsel further argued that defendant denied some of the convictions listed in the rap sheet, and that he required additional time to investigate the validity of those convictions.[10] Counsel was particularly concerned that one of the convictions in question was obtained in New York, and that it would take him some time to secure documentation of that offense. The trial court denied defendant's motion, and the trial proceeded as scheduled.
The granting of a continuance is discretionary on the part of the trial court, and the denial of a motion for continuance is not grounds for reversal absent abuse of discretion and a showing of specific prejudice.[11] Defendant now contends that he *647 needed extra time to investigate whether some of the listed convictions were misdemeanor offenses not subject to use for impeachment purposes, because he argues the rap sheet was not clear. He argues that the trial court's denial of a continuance deprived him of the opportunity to further investigate the matter. Defendant does not, however, make an adequate showing that he was prejudiced by the denial of his motion for continuance.
Defendant testified on his own behalf at trial. Prior to his testimony, defense counsel moved the trial court to limit the state's use of defendant's prior convictions for impeachment purposes. In support of this motion, the defense produced documentation of several out-of-state convictions. The state in turn produced copies of the applicable New York statutes, which show that some of defendant's prior convictions were for municipal offenses. The court instructed the state that it could use only felony convictions to impeach defendant.
In response to questioning by his own attorney, defendant admitted to several prior convictions. During cross-examination, defendant admitted to, among others, a 1986 New York conviction for unlawfully dealing with a child. Defendant testified that this offense involved obtaining liquor for a minor. This offense is categorized as a class B misdemeanor. Defense counsel did not object to the use of this conviction by the state.
The documentation produced by defense counsel at trial shows he was well prepared to deal with the issue of defendant's prior convictions. Moreover, given that defendant admitted to several convictions in response to questioning by his own attorney, he cannot complain he was prejudiced by their admission. Based on the foregoing, this assignment of error merits no consideration.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment, defendant complains the trial court erred in failing to quash the amended bill of indictment. The bill of indictment, as originally written, alleged that defendant committed one count of aggravated rape on or about June 14, 1996. On September 8, 1997, the state amended the bill of indictment, changing the alleged time of occurrence to "between July 1, 1994 and July 22, 1996." On October 22, 1997, defendant filed a motion to quash the indictment alleging, among other things, that the state had improperly amended the bill. The motion was argued and denied that day. Defendant now argues that the state was barred by law from amending the grand jury indictment to change the alleged date of the offense.
LSA-C.Cr.P. art. 487 provides, in pertinent part:
A. An indictment that charges an offense in accordance with the provisions of this Title shall not be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because any similar defect, imperfection, omission, or uncertainty exists therein. The court may at any time cause the indictment to be amended in respect to any such formal defect, imperfection, omission, or uncertainty.
Defendant was charged with aggravated rape. The actual date the offense is alleged to have occurred is not an essential element of the offense.[12] When the date is not an essential element of *648 the offense charged, a mistake respecting the date on which the offense occurred is only a defect as to form, which may be corrected at any time without leave of court.[13]
Defendant fails to show that he was prejudiced by the state's amendment of the bill of indictment. He argues that the effect of the amendment was to charge him with two instances of aggravated rape rather than one. However, a reading of the amended indictment shows that it charges only one count of aggravated rape. While it is true that there was testimony at trial as to two instances of rape, the record shows that defendant was found guilty as to only one count of aggravated rape. This assignment of error has no merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent. LSA-C.Cr.P. art. 920. The review revealed one error patent. The trial court failed to advise defendant of the three-year time limitation for applying for post conviction relief, as required by LSA-C.Cr.P. art. 930.8. Accordingly, we order the district court to send a written notice of the prescriptive period to defendant within ten days of the rendering of the opinion, and file written proof in the record that defendant received said notice.[14]
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The indictment originally alleged that the rape occurred on or about June 14, 1996.
[2] Although the statement was produced at trial, it was not admitted as evidence.
[3] Boyd thereafter testified that, because defendant approached her from behind, the child was uncertain as to whether it was her anus or her vagina that defendant touched.
[4] Coy v. Iowa, 487 U.S. 1012, 1017, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857 (1988) (quoting the plurality opinion in Pennsylvania v. Ritchie, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987)).
[5] See California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970). See also, Coy v. Iowa, 487 U.S. at 1018, 108 S.Ct. at 2802.
[6] 497 U.S. 836, 849, 110 S.Ct. 3157, 3165-3166, 111 L.Ed.2d 666 (1990)
[7] Id., quoting Mattox v. United States, 156 U.S. 237, 243, 15 S.Ct. 337, 339-340, 39 L.Ed. 409 (1895). See also, State v. Wright, 96-786 (La.App. 3 Cir. 2/19/97), 690 So.2d 850, writ denied, 97-0665 (La.9/26/97), 701 So.2d 978.
[8] 497 U.S. at 857, 110 S.Ct. at 3169-3170.
[9] In his reasons for denying defendant's motion for new trial, the court commented, "The only attempt was to have the victim not be in such a position that she would be forced herself to view the defendant..."
[10] The rap sheet was not made part of the record.
[11] LSA-C.Cr.P. art. 712; State v. Kelly, 96-903 (La.App. 5 Cir. 11/12/97), 704 So.2d 800, writ denied, 97-3104 (La.4/9/98), 717 So.2d 1142; State v. Wilson, 96-251 (La.App. 5 Cir. 10/1/96), 683 So.2d 775.
[12] State v. Taylor, 525 So.2d 1118 (La.App. 5 Cir.1988), writ denied, 536 So.2d 1212 (La. 1989).
[13] State v. Cleveland, 25,628 (La.App. 2 Cir. 1/19/94), 630 So.2d 1365. See also, State v. Johnson, 95-1002 (La.App. 3 Cir. 3/6/96), 670 So.2d 651.
[14] See State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289.