871 So.2d 470 (2004)
STATE of Louisiana
v.
Kyle M. GIVENS.
No. 2003-KA-2071.
Court of Appeal of Louisiana, Fourth Circuit.
March 24, 2004.
Eddie J. Jordan, Jr., District Attorney, Nick Orechwa, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge MAX N. TOBIAS JR. and Judge Pro Tempore MOON LANDRIEU).
MOON LANDRIEU, Judge Pro Tempore.
On August 29, 2002, the State filed a bill of information charging the defendant, Kyle M. Givens, with aggravated incest in violation of La. R.S. 14:78.1. At his arraignment on September 9, 2002, he pleaded not guilty. Probable cause was found after a hearing on March 13, 2003; at trial that same day, a six-member jury found the defendant guilty of the responsive verdict of attempted aggravated incest. The State filed a multiple bill charging Mr. Givens as a second felony offender, and after pleading guilty to the multiple bill on June 3, 2003, he was sentenced to serve five years at hard labor without benefit of probation or suspension of sentence. His motion for an appeal was granted.
At trial Dana Givens, the defendant's wife, testified that she met Mr. Givens in July of 1991; Q.H., her daughter, was then about six months old. Mr. Givens moved in with Dana Givens and her daughter about a month later. They married in December of 2000. Q.H.'s biological father *471 has had no role in her life. Because Mrs. Givens worked at night, the defendant was often at home alone with Q.H. On June 16, 2002, Mrs. Givens noticed her daughter's bedroom door was closed. When she opened the door, she saw Kyle Givens kneeling at the side of Q.H.'s bed masturbating. Q.H. was stretched out on the bed with a teddy bear over her head. Mr. Givens fell toward the bed as soon as his wife walked into the room. Mrs. Givens asked what was going on, and her husband answered, "Nothing's going on, we was just jumping in the bed. We were playing." Mrs. Givens then asked her daughter the same question, and she also answered that nothing was going on. Mrs. Givens went to her room to get a belt in order to whip her daughter. Again she asked her husband what he was doing, and he denied doing anything. However, Q.H. ran into the bedroom and stated, "Mama, he's been molesting me since I was nine years old." Mr. Givens said that Q.H. was lying. Mrs. Givens immediately called 911. The defendant tried to leave the house, but she stopped him. Under crossexamination, Mrs. Givens stated that her daughter was afraid to tell her of the molestation because the defendant had told Q.H. that she would be whipped by her mother if her mother found out. Mrs. Givens admitted to having a pornographic videotape in the apartment.
Q.H. testified that her date of birth is January 12, 1991; she was twelve years old at the time of trial. She stated that she had always called the defendant "Dad." She was nine when he first molested her. On June 16, 2002, Q.H. was in her room when the defendant walked in and asked "if he could ... go down on me." When she answered negatively, he said, "Don't ask ... for candy or batteries." He left her room, but he returned later and stuck his tongue out at her. She explained that that was his way of asking for oral sex. When she again refused, he said, "We don't have to do that. At least let me see you playing with your teddy bear or something like that." He asked her to put a pillow between her legs and "to do stuff" with her teddy bear. When her mother came into her room, she tried to avoid telling her mother because her mother is very strict and would whip her. Q.H. stated that she had found the pornographic videotape and showed it to the defendant. He wanted to watch it with her, and although she did not want to do so, she watched it with him.
Detective Matthew Riles of the Child Abuse Unit testified that when he arrived at 14728 Saigon Drive he found the defendant in the back seat of Officer Tyra Pruitt's police car. The detective then went into the apartment and spoke to the defendant's wife and the victim.
The parties stipulated that the victim's bed comforter was tested for blood and seminal fluid, but neither was found. They also stipulated that garments from the defendant and the victim were also tested for blood and seminal fluid, but none was found.
Dr. Ellie Wetsmann, an expert in forensic pediatrics, testified that she examined the victim, Q. H., and made a report. Dr. Wetsmann recorded that the victim told her the defendant "made ... [her] lick his privacy part. Sometimes he was jacking himself off." Q.H. told the doctor that the defendant put his hand in her vagina and put his mouth on her "privacy part." The doctor examined the victim's genitalia and found her hymen, vagina, and anus were normal. She explained that the hymen is shaped like a donut, and digital penetration does not necessarily cause trauma.
Ms. Patricia Percy, a forensic social worker, testified that she conducted a videotaped interview with Q.H. on June 17, 2002. The tape was played for the jury.
Defense counsel filed a brief requesting a review for errors patent. Counsel complied *472 with the procedures outlined by Anders v. State of Cal., 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this Court in State v. Benjamin, 573 So.2d 528 (La.App. 4th Cir.1990). Defense counsel filed a brief complying with State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241. Defense counsel's detailed review of the procedural history of the case and the facts of the case indicate a thorough review of the record. Defense counsel moved to withdraw because he believes, after a conscientious review of the record, that there is no non-frivolous issue for appeal. Defense counsel reviewed available transcripts and found no trial court ruling which arguably supports the appeal. A copy of the brief was forwarded to defendant, and this Court informed him that he had the right to file a brief in his own behalf.
As per State v. Benjamin, this Court performed an independent, thorough review of the pleadings, minute entries, bill of information, and transcripts in the appeal record. The defendant was properly charged by bill of information with a violation of La. R.S. 14:78.1, and the bill was signed by an assistant district attorney. The defendant was present and represented by counsel at his arraignment, motion hearings, jury selection, trial, and sentencing. A review of the trial transcript reveals that the State proved the offense beyond a reasonable doubt.
Counsel complains of two errors patent found in the sentence. First, he maintains that the defendant was sentenced to five years at hard labor without benefit of parole, probation, or suspension of sentence. (Nothing in the substantive statute prohibits the benefits of parole, probation, and suspension of sentence; although the multiple offender law, La. R.S. 15:529.1(G), prohibits the benefits of probation and suspension of sentence, nothing in that statute prohibits parole eligibility). However, at the sentencing hearing, the court sentenced Mr. Givens to five years without probation or suspension of sentence; no mention was made of parole. Thus, there is no error as to parole.
He next notes that the court did not comply with R.S. 14:78.1(E) which provides that the court must require the offender, if he is able, to pay reasonable costs of counseling for the victim. We note that the defendant pleaded guilty to the multiple bill as part of a plea agreement that he would receive a five-year sentence. Furthermore, the victim's mother had asked the court to give the defendant the minimum sentence. Whether the issue of counseling costs was addressed by the court is not evident from the transcript. However, given the fact that there was a plea bargain for the sentence, we rely on the presumption of regularity of judgment and find no error patent in the sentence.
Accordingly, the defendant's conviction and sentence are affirmed. Appellate counsel's motion to withdraw is granted.
AFFIRMED; MOTION TO WITHDRAW GRANTED.