951 So.2d 1226 (2007)
STATE of Louisiana
v.
George S. GREENE.
No. 06-KA-667.
Court of Appeal of Louisiana, Fifth Circuit.
January 30, 2007.
*1229 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Megan L. Gorman, Kia M. Habisreitinger, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., MARION F. EDWARDS, and SUSAN M. CHEHARDY.
EDWARD A. DUFRESNE, Jr., Chief Judge.
The Jefferson Parish Grand Jury returned an indictment on December 12, 2002, charging defendant, George Greene, with one count of aggravated rape in violation of LSA-R.S. 14:42, one count of pornography involving a child under the age of 17 in violation of LSA-R.S. 14:81.1, and one count of sexual battery upon a juvenile in violation of LSA-R.S. 14:43.1. On September 29, 2004, a twelve person jury found defendant guilty as charged on all three counts. The trial court sentenced defendant to life imprisonment for the aggravated rape conviction, ten years for the child pornography conviction, and ten years for the sexual battery conviction. The judge imposed the sentences without the benefit of parole, probation, or suspension, and also ordered that the sentences be served consecutively. Defendant now appeals.

FACTS
At approximately 3:26 p.m. on October 21, 2002, Deputy Keith Cannizaro was dispatched to investigate a complaint of child sexual abuse. He met with B.T. (the victim's mother), P.T. (the victim's step-father), and S.S. (the victim).[1] B.T. told Deputy Cannizaro that her twelve year old daughter had disclosed she had been sexually abused by defendant, who is the victim's biological father. Deputy Cannizaro spoke to S.S. who stated defendant performed oral sex on her, had her perform oral sex on him, had intercourse with her, and took pictures of her wearing panties and in the nude. She told Deputy Cannizaro the abuse occurred every time she visited defendant, which was approximately twice a month, and that defendant told her not to tell anyone because it was their little secret. Deputy Cannizaro instructed S.S.'s mother to take her to Children's Hospital for an examination.
S.S.'s mother took S.S. to Children's Hospital that same day where she was examined by Dr. Sonseeahray Bridges in the emergency room. According to Dr. Bridges, S.S. stated her father had touched her in inappropriate ways resulting in penetrating vaginal and oral sex. Dr. Bridges' physical examination of S.S. was unremarkable. She noted a fold of hymen tissue which was either a normal variant or a possible tear that healed. She stated the variant was not necessarily indicative of sexual abuse. Dr. Bridges explained that less than 20% of sexual abuse victims show physical signs of abuse. As a result of the exam, Dr. Bridges ordered routine labs and tests to test for sexual diseases and requested social services be contacted.
Meanwhile, Detective Scott Guillory obtained a search warrant for defendant's *1230 home. Among the items seized were several pornographic videotapes and magazines. At some point during the search, defendant agreed to accompany Detective Guillory to the Detective Bureau where he gave three taped statements. In his statements, defendant admitted having sexual contact with S.S. when she was eleven years old. He specifically admitted having oral sex with her, vaginal-penile contact, and inserting a hot dog in her rectum and moving it in and out. He stated S.S. instigated the oral sex and the vaginal-penile contact.
Approximately one week later, the victim was taken to the Child Advocacy Center (CAC) where a videotaped interview, which was played for the jury during trial, was conducted by Omalee Gordon. At trial, S.S. testified that she met defendant, her biological father, when she was approximately four years old. Shortly thereafter, she started visiting him at his home about twice a month during which time he touched her private areas, which she described as her "tulip and twat." S.S. testified defendant put his penis in her mouth and told her to suck or lick it, inserted a hot dog into her butt, showed her magazines of naked people and movies of people "doing it," took pictures of her wearing a thong after instructing her to lean over and hold her butt cheeks open, and put his penis inside her "twat." She stated the last incident of abuse occurred Labor Day weekend in 2002.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assigned error, defendant contends that the trial court erred by allowing the state to introduce evidence of other crimes. Defendant specifically argues the trial court erred in allowing evidence relating to prior sexual abuse committed by defendant on T.L., his step-daughter, and B.G., his biological daughter. Prior to trial, the state filed a notice of intent to use evidence of similar crimes, under LSA-C.E. arts. 404(B) and 412.2. After several hearings, the trial court granted the motion to allow the state to present evidence of defendant's past sexual acts.
At trial, the state presented the testimony of T.L. and B.G. and played the videotaped interview each gave to the Child Advocacy Center in 1992. T.L., who was twenty-three years old at the time of trial, testified defendant is her stepfather whom she has known since she was eight or nine years old. She stated defendant started touching her in inappropriate ways after she, her mother, and brother, moved in with defendant when T.L. was almost ten years old. She explained he had a fetish with her butt and that he touched and rubbed it with his hands and his penis. T.L. testified defendant would ejaculate either on her body or in a towel. She denied defendant ever "put himself inside of [her]."
B.G., who was twenty-six years old at the time of trial, testified defendant is her biological father. She stated defendant sexually abused her from the time she was eight years old until right before she turned thirteen. She explained defendant rubbed his penis on the walls of her vagina until he ejaculated.
Defendant now argues that the trial court erred in allowing this other crimes evidence. He contends that the evidence is inadmissible under LSA-C.E. art. 404(B), which prohibits evidence of lustful disposition. He also maintains the evidence is inadmissible under LSA-C.E. art. 412.2 because the prior sexual assaults occurred *1231 before the article was enacted and prior to its August 15, 2001 effective date. Defendant asserts the admission of this other crimes evidence under Article 412.2 violates the ex post facto laws.
We first note that defendant did not raise this particular argument in the trial court. Although defendant challenged the retroactivity of LSA-C.E. art. 412.2 at trial, he argued it was inapplicable because there was no evidence the charged offense occurred after the article's effective date. Defendant never argued the article was inapplicable because the past sexual acts occurred before the effective date of the article, which is the sole basis of his argument on appeal. We note that a new ground for an objection cannot be presented for the first time on appeal. State v. Housley, 05-502 (La.App. 5 Cir. 1/31/06), 922 So.2d 659, 664-665, writ denied, 06-1183 (La.11/17/06), 942 So.2d 531.
Nonetheless, we have considered defendant's arguments and find them to be without merit. LSA-C.E. art. 412.2, which became effective on August 15, 2001, provides in pertinent part:
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another sexual offense may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
Article I, § 10 of the United States Constitution and La. Const. art. I, § 23 prohibit ex post facto application of the criminal law by the state. State v. Everett, 00-2998 (La.5/14/02), 816 So.2d 1272, 1280. The United States Supreme Court has identified four categories of law that violate the ex post facto prohibition: 1) any law that makes an action criminal that was innocent when done and before the passing of the law, 2) any law that aggravates a crime or makes it greater than it was when committed, 3) any law that changes the punishment and inflicts greater punishment than the law provided when the crime was committed, and 4) any law that alters the legal rules of evidence and requires less or different testimony in order to obtain a conviction than was required at the time the offense was committed. Rogers v. Tennessee, 532 U.S. 451, 121 S.Ct. 1693, 1697, 149 L.Ed.2d 697 (2001).
In State ex rel. Olivieri v. State, 00-172 (La.2/21/01), 779 So.2d 735, 744, cert. denied, 533 U.S. 936, 121 S.Ct. 2566, 150 L.Ed.2d 730 (2001), the Louisiana Supreme Court held that in determining whether there has been an ex post facto violation, the analysis should focus on whether the new law redefines criminal conduct or increases the penalty by which it is punished, and not whether the defendant has simply been disadvantaged. State v. Girod, 04-854 (La.App. 5 Cir. 12/28/04), 892 So.2d 646, 653, writ denied, 05-0597 (La.6/3/05), 903 So.2d 455.
Although the Louisiana Supreme Court has yet to decide whether the retroactive application of Article 412.2 violates the ex post facto prohibition, the Third Circuit has held that its retroactive application does not constitute an ex post facto violation. State v. Willis, 05-218 (La.App. 3 Cir. 11/2/05), 915 So.2d 365, writ denied, 06-186 (La.6/23/06), 930 So.2d 973, cert. denied, ___ U.S. ___, 127 S.Ct. 668, 166 L.Ed.2d 514 (U.S.11/27/06). In so concluding, the Third Circuit stated:
Article 412.2 did not alter the amount of proof required in the Defendant's case *1232 as it merely pertains to the type of evidence which may be introduced. Prior to the enactment of Article 412.2, the testimony at issue was admissible if it fell within an exception under La.Code Evid. Art. 404(B). Article 412.2 merely removed that restriction.
State v. Willis, supra at 383.
Despite defendant's contention, it does not appear the retroactivity of Article 412.2 is at issue in the present case because there is evidence the charged offense occurred after the article's effective date. In particular, the victim testified the last incident of abuse occurred Labor Day weekend before her twelfth birthday, which was in 2002. Additionally, she stated the abuse occurred "just about every time" she went to his house which was approximately once a month from the time she was four or five until the Labor Day before her twelfth birthday. In his own statement, defendant admitted he sexually abused the victim when she was around eleven years old. The victim turned eleven on October 8, 2001, which was after Article 412.2 was enacted. In fact, defendant denied any sexual abuse occurred prior to the victim turning eleven.
The fact the past sexual acts occurred prior to the effective date of Article 412.2 is inconsequential.[2] As noted by State v. Willis, supra, Article 412.2 did not alter the quantum of evidence required for a conviction but rather it simply expanded the type of evidence which may be introduced in the prosecution of certain sex offenses. Thus, even if retroactivity were an issue, ex post facto laws would not prohibit the application of Article 412.2 to the present case.
Accordingly, the arguments raised by defendant in this assigned error are without merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant argues the trial court erred in allowing inadmissible hearsay testimony by Deputy Cannizaro, Detective Dyess, Omalee Gordon, Dr. Sonseeahray Bridges, and Dr. Ellie Wetsman about what S.S. told them regarding what defendant did to her. Defendant asserts only the first report of sexual abuse, which in this case was made to B.T., falls within the LSA-C.E. art. 801(D)(1)(d) exception to hearsay. He further asserts it was not harmless error because the jury was undoubtedly influenced by the numerous repetitions of S.S.'s allegations.
Hearsay is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." LSA-C.E. art. 801(C). Subsection (D) of LSA-C.E. art. 801 sets forth certain statements that are not considered hearsay. LSA-C.E. art. 801(D) provides in pertinent part:
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
* * * *
(b) Consistent with his testimony and is offered to rebut an express of implied *1233 charge against him of recent fabrication or improper influence or motive;
* * * *
(d) Consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior.
Deputy Keith Cannizaro
The record clearly shows S.S. first reported the sexual abuse to her mother, B.T. At trial, the state first presented the testimony of S.S. and then her mother, B.T. The state next presented Deputy Cannizaro's testimony. During direct examination, the state asked him if he had a chance to speak with S.S. when he first arrived to investigate the initial complaint of child sexual abuse. Defense counsel immediately objected and argued anything S.S. told Deputy Cannizaro was hearsay. The state asserted it was admissible as a prior consistent statement offered to rebut defendant's implied charge of recent fabrication during the cross-examination of the victim. The trial court overruled the objection and allowed the testimony. Deputy Cannizaro then testified that S.S. told him that defendant performed oral sex on her, had her perform oral sex on him, and had intercourse with her. He also stated S.S. told him that defendant took pictures of her wearing panties and nude.
On direct examination, the victim testified defendant put his penis inside her "twat." While cross-examining the victim, defense counsel implicated she was fabricating certain parts of her testimony. In particular, defense counsel inquired into S.S.'s reports of sexual penetration. He asked if she remembered that during her CAC interview she was asked "about four or five times" whether defendant had actually put his penis inside of her and that she responded no.
In the present case, defendant sought to discredit the victim during cross-examination by suggesting her testimony was a recent fabrication because she testified there was penetration but previously denied penetration during her CAC interview. Deputy Cannizaro's testimony that the victim told him there had been penetration bolsters that of the victim. Thus, Deputy Cannizaro's testimony falls under the hearsay exception set forth in LSA-C.E. art. 804(D)(1)(b), which allows testimony that is consistent with that of the declarant and which is offered to rebut an implication of recent fabrication. See State v. King, 96-1303 (La.App. 3 Cir. 4/2/97), 692 So.2d 1296, 1301-1302, where the Third Circuit concluded the detective's testimony, as to statements the minor victim made to him, was admissible under LSA-C.E. art. 801(D)(1)(b) after defense counsel raised implications of fabrication while cross-examining the victim.
Additionally, a police officer may refer to statements made to him by other persons in the context of explaining his own actions. Such statements are admissible as they explain the sequence of events leading to the arrest of the defendant from the viewpoint of the investigating officer as opposed to the truth of the assertion. State v. Soler, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, 1078, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, and 94-1361 (La.11/4/94), 644 So.2d 1055.
Deputy Cannizaro was the investigating officer who responded to the initial complaint of child sexual abuse. His testimony about what S.S. and her mother told him about the incidents was very general *1234 and was seemingly offered to explain the steps of the investigation. Accordingly, the trial court did not err in allowing the testimony of Deputy Cannizaro as an explanation of the steps of his investigation and under LSA-C.E. art. 804(D)(1)(b).
Drs. Sonseeahray Bridges and Ellie Wetsman
Defendant next challenges the testimony of Drs. Sonseeahray Bridges and Ellie Wetsman. After Deputy Cannizaro's testimony, the state called Dr. Bridges. Before Dr. Bridges even took the stand, defendant objected to her anticipated testimony, and that of Dr. Wetsman, about what the victim told them during the medical exam. The trial court sustained the objection and the state noticed its intent to file a supervisory writ. This court granted the writ stating the trial court erred in sustaining defendant's objection to the doctors' testimony as such testimony did not fall outside LSA-C.E. art. 803(4). State v. Greene, Writ No. 04-K-1142. In accordance with the writ disposition, Drs. Bridges and Wetsman were both allowed to testify regarding the history given by S.S. at the time of examination.
Under the discretionary principle of law of the case, an appellate court will generally not reconsider prior rulings made in the same case on subsequent appeal. Reconsideration of a prior ruling is warranted when, in light of a subsequent trial court record, it is apparent that the determination was patently erroneous and produced unjust results. State v. Jacobs, 04-1219 (La.App. 5 Cir. 5/31/05), 904 So.2d 82, 88, writ denied, 05-2072 (La.4/28/06), 927 So.2d 282, cert. denied, ___ U.S. ___, 127 S.Ct. 385, 166 L.Ed.2d 276 (2006).
At the time this court decided the writ, Drs. Bridges and Wetsman had not testified. In light of the fact that we now have the testimony at issue available for review, we decline to apply the law of the case doctrine and choose to reconsider this issue.
LSA-C.E. art. 803(4) provides the following exception to the hearsay rule, even though the declarant is available as a witness:
(4) Statements for purposes of medical treatment and medical diagnosis in connection with treatment. Statements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause of external source thereof insofar as reasonably pertinent to treatment or diagnosis in connection with treatment.
Official Comment (b) under this article states, "[t]he phrase `reasonably pertinent to treatment or diagnosis in connection with treatment' has been interpreted to limit the scope of this exception to the kind of statements that are usually relied upon by physicians in their diagnosis and treatment of patients. Thus, statements as to the cause of a condition not reasonably pertinent to diagnosis or treatment of it are not within the ambit of this exception."
Having reviewed the testimony of Drs. Bridges and Wetsman, we find it questionable whether their testimony regarding what the victim told them by way of a history is admissible under LSA-C.E. art. 803(4). Dr. Bridges examined the victim after she was referred by Deputy Cannizaro close to two months after the last incident of alleged abuse. She examined the victim and ordered routine lab work dictated by the allegation of sexual abuse. The *1235 nursing supervisor was contacted for the necessary referrals to social services and pictures were collected. From her testimony, it seems that the principal purpose of Dr. Bridges' examination of the victim was forensic.
Likewise, Dr. Wetsman's examination, one week later, appeared to be for forensic purposes. Dr. Wetsman testified she saw the victim upon referral from the emergency room. She stated she examined the victim only one time and it was for the purpose of evaluating her for sexual abuse. A copy of the report she prepared in connection with her examination was sent to the Jefferson Parish Sheriff's Office. Her physical exam of the victim showed a thickened fold on the hymen but nothing was found in the victim's physical exam that either confirmed or denied sexual abuse. Although Dr. Wetsman testified on re-direct examination that the purpose of her exam was for diagnosis and treatment, such purpose was apparently subsidiary. See State v. Harris, 99-2845 (La.App. 4 Cir. 1/24/01), 781 So.2d 73, writ denied, 01-1225 (La.9/26/03), 854 So.2d 342, where the Fourth Circuit found a doctor's testimony regarding what the victim said during the examination to be inadmissible under LSA-C.E. art. 803(4). The court concluded the principal purpose of the doctor's examination was forensic, noting the victim had been referred to the doctor by the police four weeks after the last incident of abuse and the victim did not receive any medical treatment as a result of the doctor's examination. See also State v. Coleman, 95-1890 (La.App. 4 Cir. 5/1/96), 673 So.2d 1283, writ denied, 97-42 (La.10/31/97), 703 So.2d 11.[3]
Even assuming Drs. Bridges and Wetsman's testimony regarding what the victim told them was inadmissible hearsay, any error in admitting this evidence can be deemed harmless. S.S. herself testified in detail at trial about the incidents she recounted to both Drs. Bridges and Wetsman. The testimony of Drs. Bridges and Wetsman about the statements the victim made during their examinations of her was consistent with the victim's own testimony. Additionally, defendant made several inculpatory statements. Thus, the evidence against defendant was very strong and it cannot be said the improperly admitted testimony of either Dr. Bridges or Dr. Wetsman contributed to the guilty verdict.
Detective Larry Dyess
Defendant also challenges the testimony of Detective Dyess, who was the assisting officer in the investigation. Detective Dyess testified he helped execute the search warrant of defendant's home and followed up with the condition of the victim at Children's Hospital. He stated that during the follow up at the hospital, he spoke to the victim, her mother, and the doctor. Thereafter, he returned to the detective bureau and relayed the information he obtained at the hospital to Detective Guillory, who was in the process of interviewing defendant. Based on the information he possessed, Detective Dyess testified he believed defendant had omitted the most sensitive information from his first two statements. He proceeded to interview defendant which resulted in defendant's third statement.
On direct examination, the prosecutor asked Detective Dyess what issue had defendant omitted. Defense counsel objected on the basis of hearsay and argued the question sought information about what *1236 the witness was told at the hospital. The state contended it was not seeking that information but was only trying to establish what the defendant told Detective Dyess during the pre-interview to the third statement. Direct examination resumed and the line of questioning focused on what additional information defendant divulged to Detective Dyess during the pre-interview, which was the fact there was vaginal penile penetration. There were no questions and no testimony about what Detective Dyess was told at the hospital and by whom and no additional objections.
The only testimony about what Detective Dyess was told at the hospital was elicited on cross-examination by defense counsel and related to the allegations involving a hot dog. The only hearsay elicited was by the defendant and he did not object to the witness's response. Given these circumstances, there is nothing for this court to review, and defendant is not entitled to relief on this issue. See, State v. Cho, 02-274 (La.App. 5 Cir. 10/29/02), 831 So.2d 433, 447-448, writ denied, 02-2874 (La.4/4/03), 840 So.2d 1213, where this court found no merit in defendant's claim of inadmissible hearsay when the testimony was elicited by defense counsel on cross-examination and there was no contemporaneous objection. Furthermore, this testimony was harmless as it was cumulative and corroborative of other evidence at trial.
Omalee Gordon
Finally, defendant contends Omalee Gordon was also erroneously allowed to testify what the victim told her through the presentation of the CAC videotaped interview. It is unclear whether defendant is attempting to challenge the admissibility of the videotaped interview[4] or Mrs. Gordon's explanation of the interview during her trial testimony.
Nonetheless, as noted by the state, defendant failed to object to the admissibility of the videotaped interview of the victim or any portion of Mrs. Gordon's testimony. In fact, defense counsel specifically stated he had no objection to the admittance of the videotape into evidence.[5]
On direct examination, Mrs. Gordon testified only as to the interview procedure. The videotaped interview was played for the jury during Mrs. Gordon's testimony but she was not asked and did not testify as to what the victim told her during the interview. However, on cross-examination, defense counsel questioned Mrs. Gordon about specific questions she asked the victim and the victim's responses. Accordingly, defendant is not entitled to relief because he did not make an objection to the testimony, and in fact, he elicited the complained of testimony on cross-examination of the witness. State v. Cho, supra; see also, State v. Humphrey, 96-838 (La. App. 5 Cir. 4/29/97), 694 So.2d 1082, 1086, writ denied, 97-1461 (La.11/7/97), 703 So.2d 35.
Based on the foregoing discussion, we find that all of the arguments raised by defendant in this assignment of error are without merit.

ASSIGNMENT OF ERROR NUMBER THREE
In this assigned error, defendant argues the trial court erred in accepting *1237 Dr. Wetsman as an expert in forensic pediatrics because the area is not recognized by the American Academy of Pediatrics for purposes of board certification. He contends a Daubert[6] hearing should have been held to determine whether the field of forensic pediatrics existed.
At trial, the state sought to qualify Dr. Wetsman as an expert in the field of child sexual abuse and forensic pediatrics. It established that Dr. Wetsman was board certified in pediatrics and had been previously qualified in other courts as an expert in pediatrics and child sexual abuse. Defense counsel traversed Dr. Wetsman's qualifications and established there was no board certification for forensic pediatrics. Dr. Wetsman explained a post training fellowship was recently developed in forensic pediatrics and included the area of child sexual abuse. She stated forensic pediatrics is a sub-set of pediatrics and that work is being done to establish board certification for forensics. She further explained that the American Academy of Pediatrics has a section on child abuse and neglect.
Defense counsel stated he had no objection to Dr. Wetsman being accepted as an expert in pediatrics but objected to her being accepted as an expert in the field of forensic pediatrics or child abuse under the Daubert standard because it was not a recognized medical field. Defense counsel urged the trial court not to recognize the specialized field of forensic pediatrics and to limit Dr. Wetsman to an expert in pediatrics. The trial court ultimately accepted Dr. Wetsman as an expert as offered, which was in the field of forensic pediatrics and child sexual abuse.
Defendant's main argument is that the trial court erred in recognizing the field of forensic pediatrics and child sexual abuse under the Daubert standards. He seems to suggest there is no valid scientific connection to the field of forensic pediatrics and child sexual abuse because it is not a field for which a doctor can be board certified.
In State v. Foret, 628 So.2d 1116 (La. 1993), the Louisiana Supreme Court adopted the test for reliability of expert scientific testimony set forth by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), as a guide to determining the admissibility of expert testimony under LSA-C.E. art. 702. The Louisiana Supreme Court stated that the trial court was "to act in a `gatekeeping' function to `ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" State v. Foret, supra at 1122, quoting Daubert, 113 S.Ct. at 2796. The court explained that "[t]he reliability of expert testimony is to be ensured by a requirement that there be a `valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" Id. It stated "[t]his connection is to be examined in light of a `preliminary assessment' by the trial court of `whether the reasoning or methodology properly can be applied to the facts in issue.'" Id.
Defendant does not state to which portion of Dr. Wetsman's testimony he objects. Dr. Wetsman's testimony primarily consisted of her examination of the victim and the diagnostic conclusions she reached as a medical doctor based on the examination. *1238 The only testimony Dr. Wetsman offered outside her examination of the victim pertained to the phenomenon of delayed disclosure. The Louisiana Supreme Court has recognized the validity and admissibility of expert testimony relating to delayed disclosure in cases involving child abuse. State v. Chauvin, 02-1188 (La.5/20/03), 846 So.2d 697, 708. Additionally, Louisiana courts have long accepted expert opinion in the field of forensic pediatrics and child abuse. See, State v. Givens, 03-2071 (La.App. 4 Cir. 3/24/04), 871 So.2d 470, where Dr. Wetsman was previously qualified as an expert in forensic pediatrics; State v. Maise, 00-1158 (La.1/15/02), 805 So.2d 1141; State v. Barnes, 01-113 (La.App. 4 Cir. 11/7/01), 800 So.2d 1124, writ denied, 02-0159 (La.1/31/03), 836 So.2d 56; State v. Brockel, 98-1089 (La.App. 5 Cir. 3/30/99), 733 So.2d 640, writ denied, 99-1516 (La.10/15/99), 748 So.2d 469.
In the present case, we cannot say that the trial court abandoned its role as a gatekeeper, abused its discretion, or made a manifestly erroneous determination when he qualified Dr. Wetsman in the field of forensic pediatrics and child sexual abuse. During defense counsel's traversal of her qualifications, Dr. Wetsman explained child abuse is a sub-set of pediatrics, that a post-training fellowship exists in child abuse, and that work was being done towards establishing board certification for forensics. Defendant fails to show how the lack of an opportunity for board certification in forensic pediatrics or child abuse renders the fields scientifically unreliable.
Accordingly, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant argues the consecutive nature of his sentences, which exceed natural life, are excessive. He acknowledges that consecutive sentences arising from a single course of conduct are not per se excessive but contends particular justification for the consecutive sentences is required. He asserts the trial court failed to give reasons for imposing his sentences consecutively.
Defendant filed a motion to reconsider sentence but failed to state a basis for the motion as required by LSA-C.Cr.P. art. 881.1. The failure to state the specific grounds upon which the motion is based limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Hester, 99-426 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 103, writ denied, State v. Patterson, 99-3217 (La.4/20/00), 760 So.2d 342. Defendant does not contend that any sentence on its own is excessive. Rather, he urges that the consecutive nature of his sentences make them excessive. This court has recognized that the excessiveness of a consecutive sentence is not included in a bare constitutional review. State v. Christoff, 00-1823, (La.App. 5 Cir. 5/30/01), 788 So.2d 660, 666. Accordingly, defendant is precluded from challenging the excessiveness of his consecutive sentences. See, State v. Smith, 04-199 (La.App. 5 Cir. 6/29/04), 877 So.2d 1123, 1135, writ denied, 04-2081 (La.1/7/05), 891 So.2d 669, and State v. Watson, 02-1154 (La.App. 5 Cir. 3/25/03), 844 So.2d 198, 212, writ denied, 03-1276 (La.5/14/04), 872 So.2d 506.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Pursuant to our review, we note that the trial court failed to completely *1239 advise defendant of the prescriptive period for filing an application for post-conviction relief. According to the transcript, the trial judge advised defendant that he had "two years to file for post conviction relief." This court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete. State v. Grant, 04-341 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598. Thus, we remand the case and instruct the trial court to advise defendant by written notice within ten days of the rendition of this opinion that he has two years from the date his conviction and sentence become final to file an application for post-conviction relief, and then to file written proof in the record that defendant received the notice. See, State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 835.
Accordingly, for the reasons set forth herein, we affirm defendant's convictions and sentences and remand the matter with instructions in accordance with this opinion.
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The victim was 13 years old at the time of trial. Her initials, and those of certain family members, are used under the authority of LSA-R.S. 46:1844(W)(3), which allows the court to protect the identity of a crime victim who is a minor or a victim of a sex offense by using his or her initials.
[2] See, for reference and analogy, State v. Mourra, 06-133 (La.App. 5 Cir. 8/29/06), 940 So.2d 29.
[3] Despite finding the doctor's testimony to be inadmissible, the Fourth Circuit, in both Harris and Coleman, ultimately concluded the error was harmless.
[4] It is noted LSA-R.S. 15:440.3 and 15:440.4 permit the videotaped interview of a child sexual abuse victim into evidence as an exception to the hearsay rule, provided certain requirements are met. Defendant does not assert the statutory requirements were not met.
[5] Defense counsel lodged separate objections to the admission of the videotaped interviews of T.L. and B.G.
[6] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).